IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

VISALAKSHI MALLADI, M.D.,          )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )          3:03-CV-00633-WKW-DRB
                                   )             WO
ANTHONY J. PRINCIPI,               )
                                   )
        Defendant.                 )

_____ RECOMMENDATION OF THE MAGISTRATE JUDGE

*Defendant's Motion for Summary Judgment, or in the Alternative, Motion to Dismiss* ( Doc. 29,

Dec. 21, 2004) is due to be granted to the extent of the requested summary judgment,  for reasons

explained in this *Recommendation of the Magistrate Judge*.

## I.   PROCEDURAL BACKGROUND

### A.    The Complaint

Represented initially by counsel, Visalakshi Malladi, M.D.  ("Malladi"), initiated this job

discrimination action on June 16, 2003, against Anthony J. Principi, Secretary of Veterans Affairs

of the United States ("the VA Secretary").[1] A staff physician at the Central Alabama Veterans

Administration Health Care System located  in Tuskegee, Alabama ("TVAMC")[2], Malladi cites

---

[1]Alvin T. Prestwood,  a Montgomery lawyer, signed the complaint, and one of his associates, Linda Sue Wellman, appeared on September 24, 2003, as co-counsel (Doc.9). When Wellman left the firm,  the court granted her July 27, 2004 motion  to withdraw, and another associate, Tara S. Knee, entered her appearance (Docs. 20, 21, 22).  Both Knee and associate William L. Rodgers withdrew in early August 2005 (Docs. 45-48), and Mr. Prestwood's death triggered the dissolution of his law firm and Malladi's appearance *pro se* since October 25, 2005 (Doc. (49).

[2]The Central Alabama Veterans Health Care System resulted from the merger of the VA Medical Centers in Tuskegee and Montgomery. *See* Memorandum in Support of Defendant's Motion
(continued...)

eight personnel actions  which reflect "a pattern and practice of the  Defendant to discriminate against and harass [her] on the basis of her race (Asian-Pacific), national origin (Indian), gender (female), disability (poliomyelitis) and reprisal for engaging in prior EEO [Equal Employment Opportunity] activities." (*Compl.*, ¶ 12):

(1)   "an unsatisfactory rating on her proficiency report for the rating year of 1995-1996" (¶4);

(2)   "caus[ing] [her] belongings... to be removed from the office of Chief of the Physical Medicine and Rehabilitation Service without allowing her ample time to remove them herself" (¶5);

(3)   "allow[ing] another physician at [TVAMC] to change one of her orders on or about May 8, 1996" (¶6);

(4)   "allow[ing] a physician assistant to countersign [her]referrals and progress notes/consults" (¶7);

(5)   "on or about September 30, 1996, . . . allow[ing] a copy of a letter regarding the removal of an admonishment from [her] personnel file to be distributed to two other employees. . ." (¶8);

(6)   "allow[ing] a medical panel charged with investigating [her] complaints of ethical violations, by another physician, to make a decision without interviewing [her], in spite of [her] prior request to be present when the complaint was investigated" (¶9);

(7)   "[f]or the 1996-1997 evaluation year, . . . allow[ing] [her] supervisor to provide her with a 'satisfactory' performance evaluation, instead of a higher evaluation which she deserved" (¶10);

(8)   "mis[leading] [her] into believing that her specialty did not qualify her for an appointment to the position of Physician/Manager of the Special Examination Unit, thereby inducing [her] not to apply for the position, when in fact the ultimate selectee's specialty was the same as [hers], but the selectee was not within all of [her] classes of protected persons under the anti-discrimination/anti-retaliation statutes" (¶11).

---

[2](...continued)
for Summary Judgment, or in the Alternative, Motion to Dismiss (*Def.'s Br.* n.1).

Malladi alleges that these specified actions were "detrimental to [her] employment . . . degrading and embarrassing" and/or served to deny her promotions and other progressive benefits. She seeks legal and equitable remedies under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* ("Title VII") and the Rehabilitation Act of 1973, 29 U.S.C. 791, et seq. ("Rehabilitation Act").

**B.     Summary Judgment Submissions**

In addition to his *Answer* (Doc. 6, Aug. 22, 2003) denying the material allegations of the Complaint and raising several defenses, on December 21, 2004, the VA Secretary filed his alternative motion for summary judgment or dismissal along with several exhibits and a supporting brief. Malladi responded, by counsel, with a brief and evidentiary submission (Docs. 35 and 36), and the VA Secretary submitted a Reply Brief. The VA Secretary contends, in essence:

> When settled law is applied to the undisputed facts, it is clear that this Court should grant complete summary judgment on all Plaintiff's claims. Plaintiff cannot establish any prima facie cases of discrimination because she cannot show she suffered any adverse employment actions or that similarly-situated employees outside her protected classes were treated more favorably. Moreover, Defendant at all times acted pursuant to legitimate, non-discriminatory reasons, and Plaintiff cannot show that any of Defendant's explanations are pretext for discrimination or retaliation. In short, therefore, there are no genuine disputes of material fact and Plaintiff's claims all fall as a matter of law.[3]

United States District Judge Myron H. Thompson heard oral arguments on March 28, 2005, and the motion remained under submission upon the reassignment of the case on January 31, 2006, to United States District Judge W. Keith Watkins, who referred it on February 1 for recommendation by this Magistrate Judge (Doc. 51). In view of Malladi's unanticipated *pro se* status, the Magistrate Judge first provided an opportunity for the parties to pursue mediation or settlement negotiations

---

[3]*Def.'s Br.* at 3.

to resolve their dispute; upon defense counsel's report that the suggested course would not be feasible or productive, the court proceeded to examine carefully the pleadings along with the written and oral submissions on the pending motion.

## II.   STANDARD OF REVIEW

Because the court grounds its analysis on evidentiary submissions,[4] the summary judgment standard governs.   Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed.R.Civ. P. 56(c).   The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of "the pleadings and evidentiary record" which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).   The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing the non-moving party has failed to present sufficient evidence to establish an essential element of the non-moving party's claim. *Id., 477 U.S.* at 331.

The court's role is neither to weigh the evidence nor to find the facts; instead, it is "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250

---

[4]Defendant's submissions include several declarations, depositions, and transcripts of sworn testimony from an administrative hearing in 2001 on Plaintiff's EEO charge, and Plaintiff proffers, *inter alia*, numerous memoranda, reports, and other writings.

(1986).   Substantive law will identify those facts which are material on motions for summary

judgment.  *Id.* at 258.   The court must accept the evidence of the non-moving party as true, resolve

all doubts against the moving party, construe all  evidence in the light most favorable to the non-

moving party, and draw all reasonable inferences in the non-moving party's favor.  *Hunt v. Cromartie,*

526 U.S. 541, 550-55 (1999);  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986).[5]

### III.   FACTUAL BACKGROUND

#### A.   Overview of Stated Claims for Discrimination

Malladi contends that *each* of the  eight personnel actions challenged  in this lawsuit resulted

from intentional discrimination because of  not only her *race and national origin* (first cause of action),

but also her *gender* (second cause of action)as well as her  *disability* (third cause of action), and

*retaliation reprisal* (fourth cause of action).   That these assorted complaints of disparate treatment

involving discrete incidents, times, and personnel *all* can be explained by virtually the entire panoply

of prohibited workplace discrimination is, in a word, incredible.  Had Malladi detailed the statements

---

[5]Notwithstanding the alternative prayer for relief, the VA Secretary's motion is not bolstered by any basis for dismissal pursuant to Rule 12(b)(6), which challenges the legal sufficiency of a complaint and requires the movant to demonstrate beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The court's Rule 12(b)(6) inquiry is limited to the complaint, documents either attached to or incorporated in the complaint, and matters of which the judge may take judicial notice. Because memoranda do not constitute pleadings, additional matters asserted in or attached to supporting or opposing submissions may not be considered.  *See*  2 Moore's Federal Practice, § 12.34[2](Matthew Bender 3d ed.)   Once the court accepts "matters outside the pleadings," the dismissal motion will be treated as one for summary judgment in conformity with Rule 56 requirements.  *See*  Rule 12(b) ("If, on a motion asserting the defense numbered (6) . . . matters outside the pleadings are presented to the court and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...")

of her causes of action sufficiently for discernment of the elements requisite to establish a *prima facie* case for each different form of discrimination alleged, her contention would not be as suspect. She did not; instead, the Complaint follows the same three-sentence format for each claim of discrimination: (1) a statement incorporating the factual averments, (2) a declaration of discrimination for the reason prohibited by a specified law, and (3) a request for all forms of relief provided by the specified law.[6]

---

[6]Reproduced in its entirety is Malladi's statement of her causes of action:

### FIRST CAUSE OF ACTION
### Race and National Origin Discrimination

13.     The Plaintiff re-alleges the content of Paragraphs 1 through 12 of this Complaint in this First Cause of Action the same as if fully set out herein.

14.     The Plaintiff has been discriminated against because of her race and her national origin in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended.

15.     The Plaintiff seeks all of the forms of relief, both equitable and legal, available to her under Title VII of the Civil Rights Act of 1964, as amended, including her attorney's fees and costs.

### SECOND CAUSE OF ACTION
### Gender Discrimination

16.     The Plaintiff re-alleges the content of Paragraphs 1 through 12 of this Complaint in this Second Cause of Action the same as if set out herein in full.

17.     The Plaintiff has been discriminated against because of her gender (female) in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended.

18.     The Plaintiff seeks all of the forms of relief, both equitable and legal, available to her under Title VII of the Civil Rights Act of 1964, as amended, including her attorney's fees and costs.

### THIRD CAUSE OF ACTION

(continued...)

6

Malladi's complaint appears contemptuously cavalier in light of the stern admonition she received for filing against TVAMC on March 8, 1996, a similarly suspect "catch-all" complaint of discrimination,  represented by the same counsel who filed this action:  *Malladi v. Brown*, 987 F.Supp. 893 (M.D. Ala. 1997).  In a lengthy *Memorandum Opinion* on December 1, 1997, which granted summary judgment against Malladi, U.S. District Judge Myron H. Thompson decried the "kitchen-sink" approach represented by Malladi's discrimination complaints then and now, highlighting the resulting heavy burdens on the bench, bar, and the civil justice system.  Because the Complaint in

---

[6](...continued)

### Disability Discrimination

19.   The Plaintiff re-alleges the content of Paragraphs 1 through 12 of this Complaint in this Third Cause of Action the same as if set out herein in full.

20.   The Plaintiff has been discriminated against because of her disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq.*

21.   The Plaintiff seeks all forms of relief, both equitable and legal, available to her under the Rehabilitation Act of 1973, 29 U.S.C. § 791, *et seq*, including her attorney's fees and costs.

### FOURTH CAUSE OF ACTION
### Retaliation Reprisal

22.   The Plaintiff re-alleges the content of Paragraphs 1 through 12 of this Complaint in this Fourth Cause of Action the same as if set out herein in full.

23.   The Plaintiff has been retaliated against in violation of the provisions of Title VII of the Civil Rights Act of 1964, as amended, and the Rehabilitation Act of 1973.

24.   The Plaintiff seeks all forms of relief, both equitable and legal, available to her under Title VII of the Civil Rights Act of 1964, as amended, and the Rehabilitation Act of 1973, including her attorney's fees and costs.

this lawsuit and the Magistrate Judge's considered analysis of the summary judgment submissions

raise considerable doubt that Malladi and her counsel appreciated the import of Judge Thompson's

comments, they bear repeating, in significant part, as a necessary backdrop for the discussion which

follows:

> As will be evident from this lengthy memorandum opinion, this lawsuit presents a picture (which is becoming more and more frequent) of an abuse of the law and the judicial process. First, [ ] Malladi's case is an abuse of the court. Malladi has submitted to the court scores of claims (as contained in administrative charges and subcharges) under almost every theory she and her attorneys could uncover or imagine under statutory and case law. Surely, Malladi and her attorneys know that she has not been the victim of race, sex, national origin, and handicap discrimination simultaneously for almost every adverse employment decision at the VA. This all-encompassing contention defies common sense. It is apparent that what she and her attorneys have done is to take a kitchen sink approach—that is, to put before the court all conceivable claims with the hope that the court would sort and sift through them in search of a colorable one. This trial strategy is grossly unfair to the court and all other litigants who come before it.
>
> ****
> Second, Malladi's case is an abuse of the opposing litigant. Malladi and her attorneys have essentially forced the VA Secretary to waste his limited taxpayer-funded resources in the defense of frivolous and marginal claims.
>
> ****
> Ironically, Malladi's kitchen-sink approach is, in the end, self-defeating. By lumping her frivolous claims with her arguably colorable claims, both she and her lawyers risk losing all credibility with the court. By challenging almost all actions adverse to her under almost every conceivable applicable law, she risks making her entire case seem frivolous. With such a strategy, she risks appearing before the court as a petty and pesky litigator, rather than as a real victim of discrimination who warrants careful and sympathetic consideration.
>
> Finally and most importantly, cases such as Malladi's constitute an abuse of the very [ ] laws they seek to invoke. The purpose of laws banning discrimination based on race, sex, nation origin, and disability is venerable: to eliminate and redress serious acts of discrimination suffered by employees, both public and private. They were not intended, as Malladi has used them here, to be generalized grievance process for disgruntled employees. What Malladi does here is essentially to mock the laws. In a sense, therefore, it is Malladi, not the VA, who is guilty of gross injustice in violation of these laws.

987 F. Supp. at 900-901.

## B.   UNDISPUTED FACTUAL BASIS FOR ASSERTED CLAIMS

Malladi commenced her employment on the  medical staff at TVAMC in February 1988 as a specialist in physiatry, or physical medicine.  About six months later she became Acting Chief of the Physical Medicine and Rehabilitation Service ("PM & RS"),  was elevated to Chief in March 1989, and served solely as a staff physician after February 1996.[7]

About four years into her employment Malladi launched administratively at the TVAMC's EEO office the first of 13 discrimination complaints filed between December 24, 1992, and March 28, 1996, all but one lodged before the March 8, 1996 lawsuit decided adversely against her.  All alleged – as do the EEO charges underlying the present Complaint – discrimination against her because of her race, sex, national origin, and handicap, as well as discriminatory retaliation against her for filing discrimination complaints.[8]

The eight disputed actions specified in the present Complaint comprised four EEO administrative grievances filed between March 1996 and June 1998.  The United States Equal Employment Opportunity Commission denied relief on the  formal complaints filed by Malladi after she exhausted the administrative process at TVAMC,[9]  and it declined Malladi's requested

---

[7]Def's *Attachment A* [Pl.'s Dep. at 23:13-16, Ex.2 (curriculum vitae)]

[8]These 13 EEO charges are chronicled extensively by Judge Thompson in *Malladi v. Brown*, 987 F.Supp at 902-904.

[9]*See* Pl.'s *Ex. Q, Decision* dated October 13, 2000, remanding for an administrative hearing agency determinations made on the  eight complaints initially without any hearing. Administrative hearings before an Administrative Law Judge then proceeded over four days in June and July 2001, culminating with a decision adverse to Malladi on all asserted claims of discrimination.  The Department of Veterans Affairs adopted the decision as its final Agency Action on August 21, 2001.

reconsideration.[10]

The summary which follows for the relevant facts underlying the eight disputed acts will inform the legal analysis of Malladi's discrimination claims.

### 1. Unsatisfactory proficiency report for 1995-1996

Dr. Stanley B. Kahane, Chief of Staff of the TVAMC from January 1998 to August 1997 ("Dr. Kahane"), served as Malladi's immediate supervisor from 1992 to January 19, 1996. In controversy is his overall rating of "unsatisfactory" on Malladi's Proficiency Report for March 17, 1995 - March 17, 1996. The negative rating reflected, among other things, the findings and recommendations of an on-site independent investigation of Malladi's PM&RM department on December 14-15, 1995, in response to reported problems with her leadership and service. To explain his evaluation, Dr. Kahane included this narrative summary on the Report:

> In the past year there has been a serious deterioration in the behavior, administrative competency and relationship of Dr. Visalakshi Malladi, Chief, Physical Medicine & Rehabilitation Service, with staff. Repeated complaints regarding threats and coercion by staff members led to a review of the service by a team sent by the Headquarter PM&RS. This was followed by an announced threat that retaliation against certain members of the staff through EEO. Complaints, threats to go to the "media," "20-20" led to petition of the staff to be placed under a different administrative aegis. Subsequently, the report of the program review team was received and bore out the "irreconcilable" damage that had been done in her relationship with hospital authority. In the past few months, Dr. Malladi failed in her duties as Chief in reporting the illegal activities of an employee in financial dealings with a patient. In short, Dr. Malladi has lost the confidence of the Chief of Staff in her ability to continue management of the PM&R Service The recommendation of the review team, the petition by staff to remove them from her supervision and the recommendation of the Chief of Staff led to her reassignment in a position of staff physician in the Ambulatory Care Service.

Dr. Kahane's supervisor, TVAMC Director Jimmie L. Clay documented his unconditional

---

[10]Compl.,¶ 2

concurrence with the unsatisfactory rating for Malladi:

> I strongly concur with the Chief of Staff's comments relating to Dr. Malladi's overall performance.  The service was not managed in an effective manner during the above period.  Dr. Malladi did not exemplify any concern or respect for local management nor VHA's mission and policies during this time period.[11]

Malladi's vigorous defense of her self-rated "outstanding" performance during the evaluation period did not prompt any change in the evaluation.[12]  Her EEO complaint dated May 6, 1996 (Pl.'s Dep., Def.'s Ex. 12) targets this performance evaluation.

### 2.    Time to Remove belongings from the Office of Chief of the PM & RS

Malladi disputes the sufficiency of time allocated for her, after January 19, 1996,  to remove personal belongings from the Office she occupied formerly as Chief of the PM&RS.  It is undisputed that Dr. Kahane granted her written requests, sent on January 22 and February 16, for additional time.[13]  By memorandum dated March 5, 1996,  and  copied to Malladi,  Dr. Kahane  designated employees  "to begin organizing and sorting out materials" located in the Office, advising as follows regarding Malladi's belongings:

> Any materials and/or documents of a personal nature or any materials so noted as belonging to Dr. V. Malladi should be properly catalogued and packaged in boxes.  Once all such items are packaged, please inform my office so that Dr. Malladi may be contacted and arrangements made for her to have her belongings delivered or picked up.[14]

Malladi's EEO complaint dated May 6, 1996, includes this issue – "Dr. Kahane asking PM&RS staff

---

[11]*Def.'s Attachment E* (Declaration of  Stanley B. Kahane and Def.'s Ex. 8 [Proficiency Report]).

[12]*Def.'s Attachment A* (Exs. 9 and 10 to Pl.'s Dep.)

[13]*Pl.'s Dep*. 129-130;138-139.

[14]*Pl.'s Dep*., Ex. 18.

11

to remove my things . . . without giving me enough time to take my things by myself" – as evidence, along with her unsatisfactory proficiency report, of discrimination against her "because of reprisal, race, age, national origin, and handicap."[15]

### 3. Physician's change of orders on May 8, 1996

Upon Malladi's reassignment from PM&RS to Ambulatory Care, Dr. Rajamannar served as the only staff physiatrist in PM&RS, and in that capacity, he examined a patient formerly seen by Malladi, and in the exercise of his medical judgment, made adjustments in the physical therapy order which had been prescribed by Malladi.

After scrutinizing the relevant underlying facts,[16] the court examined the 1997 opinion in response to the VA Secretary's contention that the court granted summary judgment on Malladi's challenge in that action to "Dr. Rajamannar's action of countersigning her orders after she was detailed out of PM&RS."[17]  That opinion addresses expressly thirteen EEO charges filed by Malladi as a result of acts occurring between December 24, 1992, and March 28, 1996, and none of these acts mirror precisely the complaint arising from Dr. Rajamannar's adjustment on May 8, 1996, of a physical therapy prescription initially ordered by Malladi.  The thirteenth charge, filed March 18, 1996, complained in part that "Dr. Kahane authorized her former subordinate staff physiatrist, who

---

[15]*Pl.'s Dep.*, Def's Ex. 12 at p. 1 of attachment.

[16]*Pl.'s Dep.* at 153-156, Ex. 19; *Def.'s Attachment F* [Rajamannar *Deposition* on April 19, 2001, at 6-9; 25, 33, 49-58]; *Def.'s Attachment G* [Transcript of Rajamannar *Testimony* at June 20, 2001, Administrative Hearing on Plaintiff's EEO charges, at 538-542; 547-552]. Ex. 19, the patient's consultation note prepared on May 8, 1996 by Malladi, reflects a single change by Dr. Rajamannar – an increase in the recommended traction for physical therapy– because the patient's weight dictated the adjustment. (Dep. at 50).

[17]*Def's Br.* at 11 n.11.

is board eligible, to countersign her consultations, while she is board certified"; in rejecting Malladi's claim of retaliation discrimination resulting from this complaint, Judge Thompson reasoned:

> Malladi alleges that she suffered an adverse job action when Kahane authorized her former subordinate to countersign her consultations. This action took place after Malladi had been detailed out of the PM&RS service and was no longer generally assigned to see patients within that service. Malladi's former subordinate then became the acting chief of PM&RS with all of the responsibility for the treatment within the service. In her EEO charge, Malladi claims that this action defamed and humiliated her, and undermined her clinical privileges. Again, even if this were true, this action was taken as part of the normal actions taken as a reassignment within the hospital, and had no impact on Malladi's salary, benefits, or position. It is therefore without foundation.

Malladi, 987 F.Supp. at 918.

### 4. Physician assistant's countersigning of referrals and progress notes/consults

Like her complaint about the actions of a PM&RS physician after her transfer to another section, Malladi takes issue with a physician assistant's handling of a PM&RS patient following her reassignment to another department. Physician's Assistant William L. Crawford added his signature below Dr. Malladi's at the end of a patient's progress note which authorized a prosthetic device; he did so pursuant to "the authority to order prosthetic devices" which vested then in "Dr. Raj and [himself]" for the PM&RS:

> Dr. Malladi was not chief of rehab at the time. This was sent to me by the prosthetic department. The prosthetic department needed an okay that it was all right to give this out. Now, nobody at the VA, no other service, is allowed to write a prosthetic item except rehab. Now, they understood that Dr. Malladi had been part of rehab, and they sent this along with the prosthetic form for them to give out this piece of equipment, because Dr. Malladi no longer worked in rehab or as a rehab physician. And this was to okay the prosthetic department that it was all right to give out that piece of equipment.[18]

_____

[18]Deposition of William L. Crawford, April 17, 2001 ("Crawford Dep."), _Def.'s Attachment_
(continued...)

13

Malladi confirmed this "one" episode as the basis for her complaint and also acknowledged that she no longer worked in PM&RS when the patient presented upon referral from the prosthetic department for re-authorization of the device she had prescribed, additionally, she did not dispute that during her tenure as Chief of PM&RS, orders for prosthetic devices required evaluation and approval by the PM&RS department. Nonetheless, without seeking an explanation from Crawford or her physician superiors in PM&RS, she construed his signature under hers as an impermissible "countersign[ing] of her physician notes or orders."[19]   Though her EEO charges about this action by Crawford generally impugned a discriminatory motive, she testified that she did not "ever hear [him] make any derogatory or offensive commits about [her] race . . . national origin, gender, [or] handicap." Her "retaliation" claim is premised on having "heard [Crawford] stating [in testimony at the administrative hearing] that he was mentioning about EEO cases to the site review team", and she generally holds both Crawford and Dr. Kahane accountable for all of the different grounds of discrimination alleged on account of this incident based on her belief that Crawford did nothing similar with respect to prosthetic orders from  physicians not of her race, national origin, gender, or handicap.[20]

### 5. Distribution on September 30, 1996 of letter regarding the removal of an admonishment from [her] personnel file

In her EEOC complaint filed November 8, 1996, Malladi cited Dr. Kahane, as follows, for the multi-faceted blanket claim of discrimination repeated for all her factual allegations:

---

[18](...continued)
*M*  at 25-27.

[19]*Malladi Dep.* at 199-202.

[20]*Malladi Dep.* at 203-206.

14

I received a copy of the memo dated 9-30-96 on 10-4-96, subject being "Removal of the admonishment" from COS to Chief, Human Resources Management Service" and copies to Medicial Center Director, Dr. V. Malladi, Virginetta Cannon, Verdelle Chambliss. The admonishment was removed from my Official Personnel Folder (OPF) on 9-17-96 . . .   There is no need for Dr. Kahane to include my name in that memo and to circulate that memo with my name to the other persons as listed above. It shows that the others were notified that I was given an admonishment.  I consider this as harassment and reprisal.  I am filing this against Dr. Kahane, the COS.[21]

Dr. Kahane testified, in relevant part:

In September 1996, I wrote Human Resources and requested that admonishments that had been issued to Dr. Malladi, Ms. Cannon, and Ms. Chambliss  be removed from their personnel files. . ..  The admonishments stemmed from the situation involving an employee having financial dealings with a patient.   Since the admonishments were six months old, I wrote Human Resources asking that they be removed from the files and copied all three employees on the memorandum.

I did not intend to embarrass any of them when I copied them on the memorandum. I just wanted to let them know that the memorandum was going to Human Resources and that the admonishments were going to be removed.  It was my understanding at the time, based on the fact that I had verbally admonished all three of them in my office and what I had heard from people, that all three of them knew about each other's admonishments.  I did not think that my memorandum was revealing anything new to any of them.

Neither Ms. Chambliss nor Ms. Cannon is Asian or from India.  In 1996, I was not aware of either of them having any impairments or disabilities.[22]

### 6.  Denied requested interview by  medical panel investigating complaints of ethical violations  by another physician

Malladi filed an ethics complaint with TVAMC's Ethics Advisory Committee against Dr. Rajamannar for his May 8, 1996, adjustment of her physical therapy order.  Because the Committee Chairman deemed it beyond the scope of the end-of-life issues reserved for the Committee, he

---

[21]*Pl.'s Dep.*, Ex. 21 at 2.

[22]Def.'s Attachment F, *Kahane Dec.*, ¶¶ 16-18.

referred it to Chief of Staff Kahane, who submitted it for review by a  panel consisting of three

physicians – two of whom served as Associate Chiefs of Staff – and a psychologist.  Before concluding

adversely to Malladi, the panel  did  not  interview  Malladi  after  reading  her  complaint  and

interviewing Dr. Rajamannar.   As Dr. Rao Chava, Associate Chief of Staff for Extended Care,

explained  the panel's decision not to interview Malladi:

> Dr. Malladi's complaint was in writing; therefore, we knew what Dr. Malladi's
> complaint was, what are the issues Dr. Malladi was writing.  Therefore, we need to
> – we needed to ask Dr. Raj what his reasons were to make that change.  And then we
> had independently looked at the  literature about the – after we were talking about
> – because we did not have anything from Dr. Raj.  We have from Dr. Malladi what
> her concerns were; therefore, we have to ask Dr. Raj to respond to those things.  And
> then we looked at the literature about the specifics of the treatment and that is how
> we made the decision.  And we did not interview Dr. Malladi.[23]

### 7.   Satisfactory instead of higher performance evaluation for  1996-1997

Dr. Robinson, Malladi's supervisor in the Ambulatory Care unit to which she was transferred

on January 19, 1996, assessed her annual performance for the March 1996-March 1997 period as

"satisfactory" overall and for clinical competence, educational competence, and personal qualities.

 Because she did not receive the "outstanding" rating to which she felt entitled in all categories,

Malladi complained that the "satisfactory" evaluation indicated Dr. Robinson's and Dr. Kahane's

motivations to discriminate on account of her gender and handicap and in retaliation for her prior

EEO complaints. [24]

### 8.   Improperly induced non-application for position of Physician/Manager of
### the Special Examination Unit

---

[23]Transcript of the testimony of Nageswara Chava, June 22, 2001, Administrative Hearing on
Pl.'s EEO Charges, *Def.'s Attachment K* ('Chava Tran.") at 956.

[24]Pl.'s Dep. at 233-244, Ex. 37 at 3 ("I believe that I was discriminated against Sex, Handicap,
and Reprisal for filing previous EEO cases.")

Malladi did not apply for an position advertised in March 1998 for Manager, Special Examination Unit, because the announcement included a proviso for applicants board-certified in internal medicine, occupational medicine, or family medicine.  Upon notice that Dr. Robinson selected Dr. Vijay Verma, who was board-certified only in physiatry, Malladi charged in a July 7, 1998 EEO complaint that the selection reflected discrimination against her due to her gender, handicap, and in retaliation for her EEO complaints; she cited Dr. Robinson, Dr. Nissenbam, the new Medical Director of Clinical Programs, and TVAMC Director Clay.[25]

Dr. Verma was one of just two candidates who responded to the advertised position, and after one candidate withdrew, Dr. Robinson selected Dr. Verma – whose wife was then being actively recruited to TVAMC – after discerning that his overall training, experience, interpersonal skills, and innovative ideas, amply matched him with the desired attributes for the post.[26]

## IV.  LEGAL ANALYSIS

Undaunted by the paucity of direct or circumstantial evidence of discriminatory intent by the TVAMC decisionmakers involved, Malladi simply insists that her race, national origin, gender, and disability, along with a retaliatory animus for her frequent filer status as an EEO complainer,

---

[25]*Pl.'s Dep*. at 263-264, Ex. 40.  Malladi testified that she did not claim race or national origin as grounds for discrimination, and her claim of "favoritism" is that Dr. Robinson "favored a male, non-handicapped, who did not file EEO cases." *(Dep*. at 264: 6-20).  She could not relate having heard Dr. Nissenbaum make any offensive or derogatory or negative comments regarding her gender, handicap, or any EEOC activity. (*Id*. at 265)  Nor had she discussed with any of the three persons cited her interest in the position. (*Id*. at 268-269).

[26]Def.'s Attachment L, *Robinson Tran*. at 816-818.

17

motivated in part or altogether each and every personnel grievance she deemed unfavorable to her in any respect.  At the oral arguments before Judge Thompson on March 28, 2006, counsel for Malladi confirmed the eight specific incidents summarized *supra* as the adverse actions disputed on summary judgment "except for the general one about harassment."[27]  All but three of the actions triggered Malladi's claims of discrimination on all theories asserted – race , national original, gender, disability, and Title VII retaliation.  Malladi asserted only claims of gender, disability, and retaliation discrimination  from three  actions: the unsatisfactory performance evaluation for 1995-1996, the satisfactory evaluation for 1996-1997, and her induced non-application for the "Physician Manager" position in the Special Examination Unit.[28]

Analysis readily discloses that the bulk of her specified grievances fail to qualify as adverse

---

[27]The Magistrate Judge pretermits any discussion at all on any general claims of harassment as neither the Complaint nor Malladi's summary judgment opposition present any specific claims which rise to the level of "hostile environment" sexual harassment or any other cognizable theory of discriminatory harassment.  Malladi's brief simply cites the case law standard applicable to "harassment or hostile environment", and represents: "The events outlined in this case, emanating as they do from the events described in Malladi I, should satisfy the standards for a harassing, hostile work environment case.*"  Pl.'s Br.* (Doc. 35) at 26.  While "[t]he hostile work environment issue [may have] been fully treated at the administrative level", as Malladi contends, she is obliged here to plead this claim clearly – as the Complaint fails to do –  and to demonstrate the existence of a genuine issue of disputed material fact regarding any claim that the TVAMC subjected her to conditions that were objectively severe or pervasive enough to alter the terms and conditions of her employment and create a hostile work environment.  *See Miller v. Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *see also, Harris v. Forklist Systems, Inc.*, 510 U.S. 17,22 (1993).

[28]Contrary to counsel's representation during arguments, the administrative record, Malladi's testimony, as referenced *supra,* and Malladi's brief (at 22 n.12) clearly disavow race or national origin as grounds for her discrimination claims arising from both the "satisfactory" rating Dr. Robinson assessed for her 1996-1997 annual performance and her non-selection for the Physician/Manager position.  Moreover, as noted properly by the VA Secretary, she "never raised during the administrative process" . . . and "the parties agreed during [her] administrative hearing that she was not pursuing race and national origin claims regarding her satisfactory evaluation or her non-selection." *Def.'s Br.* at 25 (See Counsel Stip. Admin. Tran. at 1008: 6-1010:4, 1012: 8-17).

employment actions which can be redressed by the asserted anti-discrimination statutes, and critical deficiencies doom her prima facie cases for the disability and retaliation discrimination alleged.

### A.    Race, National Origin, and Gender Discrimination Claims

#### 1.    *Title VII Framework for Disparate Treatment Claims*

Title VII, 42 U.S.C.A. § 2000e-2(a), makes it an "unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." On Malladi's claim of disparate discriminatory treatment supported only by circumstantial evidence, judicial analysis is guided by the familiar burden-shifting analysis framed by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981), and summarized cogently by Judge Thompson in *Hall v. Ala. Assn. of School Bds.*, 326 F.3d 1157, 1166 (11th Cir. 2003):

> [A]n employee has the initial burden of establishing a *prima facie* case of unlawful discrimination by a preponderance of evidence. A "*prima facie* case requires 'evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion.'" ... If the employee establishes a prima facie case, the burden then shifts to the employer to rebut the presumption by producing sufficient evidence to raise a genuine issue of fact as to whether the employer discriminated against the employee. This may be done by the employer articulating a legitimate, non-discriminatory reason for the employment decision, which is clear, reasonably specific, and worthy of credence. The employer has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced...Once the employer satisfies this burden of production, the employee then has the burden of persuading the court that the proffered reason for the employment decision is a pretext for discrimination. The employee may satisfy this burden either directly, by persuading the court that a discriminatory reason more than likely motivated the employer, or indirectly, by persuading the court that the

proffered reason for the employment decision is not worthy of belief. By so persuading the court, the employee satisfies his ultimate burden of demonstrating by a preponderance of the evidence that he has been the victim of unlawful discrimination. (internal citations omitted).

Malladi's *prima facie* case for discriminatory disparate treatment at TVAMC must establish that: (1) she belongs to a protected group; (2) she was subjected to adverse job action; (3) TVAMC' treated more favorably similarly situated employees outside her race, national origin, or gender;[29] (4) she met the qualifications for any job in controversy. Her task " is not onerous; it requires only that she establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 114 F.3d 1555, 1561-1562 (11th Cir. 1997). The ultimate issue is whether TVAMC intentionally discriminated against Malladi. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993); *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715 (1983). The *McDonnell Douglas* analysis provides an invaluable method of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *Hall*, 326 F.3d at 1167 ( *quoting Burdine*, 450 U.S. at 255, n.8.)

### 2.    *Title VII Disparate Treatment Analysis*

As now explained, the court readily agrees with the VA Secretary that Malladi suffered no adverse employment action with respect to seven of her eight claims for disparate treatment, and she cannot, therefore, establish a prima facie case of Title VII race, national origin, or gender discrimination. Nor does the eighth claim establish the requisite case for disparate treatment.

---

[29]"To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [she] and the employees are similarly situated in all relevant respects." *Holifield v. Reno*, 114 F.3d 1555, 1562 (11th Cir. 1997) (*citing Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994).

### a.  No adverse employment action

*( i ) performance evaluations*

The two performance evaluations cited – "unsatisfactory" for 1995-1996 and "satisfactory" for 1996-1997 – had no effect on Malladi's compensation and did not otherwise result in any material change in her compensation, benefits, terms, or privileges of employment.[30]  *See Gillis v. Georgia Dep't of Corrections,* 400 F.3d 883, 888 (11th Cir. 2005) ("hold[ing] that an evaluation that directly disentitles an employee to a raise of any significance is an adverse employment action under Title VII");  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (finding performance memoranda amounted to criticisms of the officer's job performance but did not lead to tangible job consequences and thus could not constitute adverse employment action);  *Gupta v. Florida Board of Regents*, 212 F.3d 571 (11th Cir. 2000) (denied pay raise and tenure-related decisions are adverse employment actions).

"[C]ourts are wisely reluctant to treat job performance memoranda as actionable under Title VII where they do not trigger any more tangible form of adverse action such as a loss in benefits,

---

[30]Probed specifically at her deposition about any adverse effect from her "unsatisfactory" evaluation, Malladi insisted that it affected her pay in that she suffered a reduction in salary when she was transferred from Chief of the PM&RS to a staff physician post in Ambulatory Care. (Malladi *Dep.* at 107-116).  That transfer on February 18, 1996, however, preceded completion of her performance evaluation for March1995- March 1996, and Malladi challenged unsuccessfully in her lawsuit filed March 8, 1996, whether the transfer itself amounted to impermissible discrimination. *See Malladi*, 987 F. Supp. at 911, 921-922.

Unlike the aggrieved employee in *Gillis v. Georgia Dept. of Corrections*, 400 F. 3d 883, 888(11th Cir. 2005), Malladi presents no evidence that her satisfactory performance evaluation nonetheless deprived her of a significant increase in salary.  *See Merriweather v. Ala. Dept. of Pub. Safety*, 17 F. Supp. 2d 1260, 1274 (M.D. Ala. 1998), *aff'd,* 199 F. 3d 443 (11th Cir. 1999)("lower employee evaluation scores which still meet the employer's expectations for employee performance and are not used as a basis for any employment detriment are not 'adverse employment action' within the meaning of that element of a plaintiff's prima facie case of Title VII retaliation").

ineligibility for promotional opportunities, or more formal discipline." *Davis*, 245 F.3d at 1241.[31]

The court acknowledged that "[a]n employee who receives criticism or a negative evaluation may lose self-esteem and conceivably may suffer a loss of prestige in the eyes of others who come to be aware of the evaluation" but it reasoned that "the protections of Title VII simply do not extend to 'everything that makes an employee unhappy.'" *Id.*, *citing Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (holding that oral reprimands were not actionable under Title VII's retaliation clause and adding that "otherwise, minor and even trivial employment actions that an 'irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'") (*quoting Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996)). [32]

*( ii) miscellaneous workplace grievances*

Also challenged as "adverse job actions" are Malladi's complaints regarding (1) inadequate

---

[31] *See Merriweather v. Ala. Dept. of Pub. Safety*, 17 F. Supp.2d 1260 (M.D. Ala. 1998), *aff'd*, 199 F.3d 443 (11th Cir. 1999). The *Davis* court also cited cases from other circuits which "have taken a similar approach, finding that criticisms of an employee's job performance – written or oral – that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit. *See*, e.g.,*Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 409-10 (6th Cir. 1999) (counseling memoranda, unlike denial of promotion, did not constitute "materially adverse" employment action even though motivated by racial animus); *Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) (counseling memoranda and "negative performance evaluations, standing alone, cannot constitute an adverse employment action"); *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996) (rejecting proposition that "a low performance rating is always an adverse employment action"); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994) (allegedly unjustified negative performance evaluation held not actionable).

[32] Malladi concedes the strict test for "adverse employment action" suggested by the *Davis v. Town of Lake* Park case but attempts to posit a conflict in the Eleventh Circuit case law. *See Pl.'s Br.* (Doc. 35) at 3-5. After reviewing *Cox v. American Cast Iron Company*, 784 F.2d 1546 (11th Cir. 1986) and the other case law identified by Malladi, the court discerns no such material conflict.

time to remove office belongings after her transfer as Chief of the PM&RS; (2) modification of her patient order by Dr. Rajamannar; (3) not being interviewed by medical panel reviewing her ethics charge against Dr. Rajamannar;   (4) a physician assistant's countersigning of her referral for a patient; and (5) distribution to two former subordinates of a memorandum reporting the removal of an admonishment from her personnel file.  *See* Complaint, ¶¶ 5-9.   For analytical purposes, all of these actions can be categorized as workplace incidents  which neither violated an employment-related policy, privilege, or right nor materially or significantly affected adversely Malladi's job benefits or entitlements; nonetheless, these actions made Malladi unhappy, wronged, embarrassed, degraded, or like the aggrieved officer in Davis *v. Town of Lake Park, Fla*., "diminished his prestige and self-esteem."

The Eleventh Circuit's explanation in *Davis*, 245 F.3d at 1239, of the requisite "substantiality" for an adverse employment action is instructive for this analysis:

> Whatever the benchmark, it is clear that to support a claim under Title VII's anti-discrimination clause the employer's action must impact the "terms, conditions,  or privileges" of the plaintiff's job in a real and demonstrable way. Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment. We therefore hold that, to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

Informed by this circuit's relevant case law, this court readily concludes that none of the disputed grievances amount to an  adverse employment action which is  actionable under Title VII.[33]

---

[33]An additional basis for rejecting two of Malladi's claims – the modification of her patient order by Dr. Rajamannar and  a physician assistant's countersigning of her referral for a patient – may
(continued...)

Acknowledging that some of the individual grievances might not rise to that level, Malladi argued orally that the court should consider "all of the incidents together collectively and determine whether there is an adverse job action". The Eleventh Circuit has acknowledged that the cumulative effect of several individual actions may be considered in determining whether an adverse employment action has occurred. *Bass v. Bd. of County Comm'rs. Orange County, Fla*., 256 F.3d 1095, 1118 (11th Cir. 2001). Nonetheless, "[a]n action which, it turns out, had no effect on an employee is not an 'adverse' action." *See Stavropoulos v. Firestone*, 361 F.3d 610, 617 (11th Cir. 2004), cert. denied, 544 U.S. 976 (2005) (citations omitted).

Even if the court found the evidence sufficient for the requisite "adverse employment action", Malladi's prima facie case would not be complete absent evidence of disparate treatment from similarly situated employees not in her protected classes; while her deposition testimony speculates regarding a number of employees, close scrutiny reveals no actual comparators for the incidents in question. Moreover, assuming *arguendo* any prima facie cases for her Title VII

---

[33](...continued)
rest on a finding that neither this co-employee physician nor the subordinate physician's assistant qualifies as a Title VII employer. In his opinion granting summary judgment against Malladi in her first lawsuit, Judge Thompson declared, in relevant part:

> In this case, the employees, who Malladi alleges have perpetrated discrimination against her, do not fall within the definition of employer under Title VII. These employees do not perform any traditional employer functions, and, in fact, perform no functions that can impact the terms and conditions of Malladi's employment; they are her subordinates. In addition, Malladi does not allege that the VA in any way acted through these employees to perpetrate its discriminatory end ...

*Malladi*, 987 F. Supp at 909.

complaints of race, national origin, and gender discrimination, the VA Secretary has articulated legitimate, non-discriminatory reasons for these actions – as well as for Malladi's performance evaluations – and Malladi offers absolutely no credible evidence of discriminatory intent or other pretext.

### b. *Non-application/selection: Physician Manager, Special Examination Unit*

In contrast to the  workplace grievances which clearly  fall short,  denial of a promotional opportunity or position with desirable benefits – as Malladi references in paragraph 11 of her Complaint – clearly satisfies the "adverse employment action" element of the prima facie case for Title VII discrimination:

> The Defendant unlawfully misled the Plaintiff into believing that her specialty did not qualify her for an appointment to the position of Physician/Manager of the Special Examination Unit, thereby inducing the Plaintiff not to apply for the position, when in fact the ultimate selectee's specialty was the same as that of the Plaintiff, but the selectee was not within all of the Plaintiff's classes of protected persons under the anti-discrimination/anti-retaliation statutes. In fact, the Plaintiff's qualifications were superior to those of the selectee, who was an Asian Pacific of Indian nationality, but who was an able-bodied male who had not filed EEO complaints.

A necessary element of the prima facie case for a discriminatory hiring claim, however, is that the qualified plaintiff *applied* for the position in controversy.  Malladi cannot document her application because she maintains that the responsible TVAMC superiors induced her not to apply by a job announcement which specified qualifications she did not meet. She claims gender, disability, and retaliation discrimination in response to the hiring of Dr. Vijay Verma, an Asian Pacific male of Indian nationality who also lacked the advertised medical specialties  – Internal Medicine, Occupational Medicine, Family Practice – and, in fact,  held the same medical specialty, physiatry,

as did Malladi.[34]

Malladi's gender discrimination claim is entirely bootless.   Irrespective of her reasons, not applying for the position dooms Malladi's prima facie case.  *Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1346 (11th Cir. 2003). [35] Disregarding her non-application and focusing instead on her

_____

[34]Malladi's EEOC complaint, dated July 7, 1998, identified Dr. Cliff Robinson, Medical Director for primary care, Dr. Mark Nissenbaum,  Medical Director for Clinical programs, TVAMC Director Jimmie L. Clay, for this non-hiring claim couched as a "failure to promote" . . . "on the basis of Sex and Handicap and Reprisal for Prior EEO activity":

> Hiring Dr. Verma a Board Certified Physiatrist, as I too am, but who is a male without handicap, for the said position and not a "A BOARD CERTIFIED PHYSICIAN IN EITHER INTERNAL MADICINE (*sic*), OCCUPATIONAL MEDICINE OR FAMILY PRACTICE", as the announcement's required "MUST" candidate, amounts to "FAILURE TO PROMOTE" me, as an issue.

(Pl.'s *Dep.*,Def.'s Ex. 40)

[35]Malladi's brief in opposition to summary judgment concedes that she failed to apply and offers no legal basis for this court to excuse her lack of application save an appeal to the court's sense of fairness:

> In this case, Dr. Malladi's failure to apply was occasioned by the apparently artful and skillful drafting of the job announcement.  The Plaintiff simply noted that her experience did not qualify her for the position, as it was originally announced. (Plf. Dep. 256:3 to 257:7) Dr. Robinson was the decision-maker in the case of this selection in 1998 (Defs. Memorandum, p.20, n.19), and he, of course, was familiar with all of Dr. Malladi's difficulties with the V.A> in the past. He knew she as interested in transferring to some other position, but relied upon a conclusion that she had never indicated an interest in this specific position. (Def. Memorandum, pp. 21-22).  ***The Plaintiff was effectively misled into not applying for the position in the Special Examination Unit, and it would be significantly unfair to dismiss her claim because she had not applied for the specific position. That being the only barrier to her establishment of a prima facie case, it is submitted that she has satisfied that criteria.***

*Pl.'s Br.* at 23 (*emphasis added*).  Confronted with specific legal standards to inform its evaluation, this court declines the invitation to rule instead based on any

(continued...)

proffered theory of discrimination, the court readily dismisses the claim for lack of any evidence of gender-based animus influencing the selection process; Malladi fails altogether to demonstrate any pretext in the legitimate, non-discriminatory reasons articulated by Dr. Robinson for Dr. Verma's selection.

**B**.    **Disability Discrimination Claims**

*1.    Disparate Treatment Claims under the Rehabilitation Act*

The Rehabilitation Act, which covers federal employees,[36] and the Americans with Disabilities Act ("ADA"), which targets private as well as state and local governmental employees,  present no significant differences in the analysis of rights and obligations created.   Because Malladi presents only circumstantial evidence for her claims of disability discrimination and the VA Secretary denies any consideration at all of the alleged disability, the court's analysis is informed by the *McDonnell Douglas* burden-shifting framework.[37]

_____

[35](...continued)
        assessment of unfairness to the Plaintiff under the circumstances cited.

[36]The Rehabilitation Act, 29 U.S.C.A. 794(a) provides, in relevant part:

        No otherwise qualified individual with a disability . . . shall, solely by reason of his or
        his disability, be excluded from the participation in, be denied the benefits of, or be
        subjected to discrimination under any program or activity receiving Federal financial
        assistance or under any program or activity conducted by any Executive agency or by
        the United States Postal Service.

[37]Discrimination claims under the Rehabilitation  Act are analyzed under the same standards used in ADA cases. *See Ellis v.  England*, 432 F. 3d 1321, 1326 (11th Cir. 2005); *Sutton v. Lader*, 185 F. 3d 1203, 1208 n. 5 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.*, 92 F. 3d 1130, 1132 n. 2 (11th Cir. 1996); *see also Hilburn v. Murata Elecs. N. Am. Inc.*, 181 F. 3d 1220, 1226 (11th Cir. 1999)(*McDonnell Douglas* burden-shifting framework applicable to other employment discrimination suits applies to ADA claims).

27

A prima facie case of disparate treatment under the Rehabilitation Act requires Malladi to show (1) that she is a "disabled person" under the Act; (2) that she is "otherwise qualified" individual – i.e., that she can perform the essential functions of the position in controversy, with or without reasonable accommodation; and (3) that she was discriminated against because of her disability. *Ellis v. England,* 432 F. 3d 1321 (11th Cir. 2005); *Carruthers v. BSA Advertising, Inc*., 357 F. 3d 1213 (11th Cir. 2004).

Direct proof of discriminatory intent is not required under the Rehabilitation Act, as it is not required under Title VII, in order to prove disparate treatment; however, a plaintiff's circumstantial evidence must raise an inference of intent to discriminate.   Such an inference can be shown by establishing all the elements of the prima facie case.  The evidentiary burden then shifts to the VA secretary, who can defeat the presumption of discrimination by producing evidence of a legitimate, non-discriminatory reason for the disputed actions.  If the VA secretary succeeds on this burden of production – which is not equivalent to a burden of persuasion – on this summary judgment motion, the burden shifts back to Malladi to create a genuine issue of material fact that the proffered reason is simply a pretext for discrimination.

### 2. *Disability Disparate Treatment Analysis*

For analytical purposes limited to its summary judgment submission, the VA Secretary accepts Malladi's cited impairment of polio as sufficient to establish that she suffers a disability covered by the Rehabilitation Act.[38]   Thus, the dispositive issue is whether Malladi has produced evidence to

---

[38]As defined by 29 U.S.C.A.§705(20)(B), an "individual with a disability" is "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

support her claim that discrimination on account of her polio motivated any of the workplace grievances which are the subject of her Complaint.   No extended analysis – beyond the discussion of these grievances in the context of Title VII liability – is necessary because her submissions are patently deficient on this critical element.

### C.    Retaliation Discrimination Claims

#### 1.   *Analytical Framework for Retaliation*

Title VII, 42 U.S.C. §2000e-3(a) makes it "an unlawful employment practice for an employer to discriminate against any of his employees. . ., because he has opposed any practice made an unlawful employment practice...,or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." For a prima facie case of Title VII retaliation,  a  plaintiff must demonstrate (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse action; and (3) that the adverse  action was causally related to the protected activity. *Cotton v. Cracker Barrel Old Country Store, Inc.,* 434 F. 3d 1227, 1233(11th Cir. 2006); *Gupta v. Fla. Bd. of Regents,* 212 F. 3d 571, 590 (11th Cir. 1999); *Smith v. Ala. Dept. of Public Safety*, 64 F. Supp.2d 1215, 1231-32 (M.D. Ala 1999).

To establish the first element– that plaintiff engaged in a statutorily protected activity– a plaintiff must show that she "had a good faith, reasonable belief that [Defendant] was engaged in unlawful employment practices." *Weeks v. Harden Mfg. Corp.*, 291 F. 3d 1307, 1311-12 (11th Cir. 2002)(citing *Little v. United Techs.,Carrier Transicold Div.*, 103 F. 3d 956 (11th Cir. 1997)).   "A plaintiff must show not only that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light

29

of the facts and record presented. *Little*, 103 F. 3d at 960 (emphasis in original). Substantive law

guides the "objective reasonableness" assessment. *See Clover v. Total Sys. Servs., Inc.*, 176 F. 3d 1346

(11ᵗʰ Cir. 1999); *see also McConnell v. Westpoint Stevens, Inc.*, 168 Fed. Appx. 911 (11ᵗʰ Cir. 2006).

    The second and third elements for Title VII retaliation – adverse action causally related to

the employee's protected action  – implicate the statute's "discriminate against" phrase, and in

*Burlington N. & Santa Fe Ry. Co. v. White*, 126 S.Ct. 2405, 2409 (2006), the Supreme Court resolved

conflicting circuit precedents on the scope and nature of actionable retaliation:

> We conclude that the anti-retaliation provision does not confine the actions and
> harms it forbids to those that are related to employment or occur at the workplace.
> We also conclude that the provision covers those (and only those) employer actions
> that would have been materially adverse [39] to a reasonable employee or job applicant.
> In the present context that means that the employer's actions must be harmful to the
> point that they could well dissuade a reasonable worker from making or supporting
> a charge of discrimination.

For the necessary causal connection,  "a plaintiff need only show that the protected activity

and the adverse action were not wholly unrelated." *Clover*, 176 F.3d at 1354 (quoting *Simmons v.

Camden County Bd. of Education*, 757 F.2d 1187, 1189 (11ᵗʰ Cir. 1985)).  "For purposes of a prima

facie case, 'close temporal proximity' may be sufficient to show that the protected activity and the

---

[39]"We speak of *material* adversity", the Court explained, because we believe it is important
to separate significant from trivial harms.  Title VII, we have said, does not set forth "a general
civility code for the American workplace."  *Oncale v. Sundowner Offshore Services*, Inc., 523 U.S.
75, 80, (1998); . . .   The anti-retaliation provision seeks to prevent employer interference with
"unfettered access" to Title VII's remedial mechanisms.  *Robinson v. Shell Oil Co.*, 519 U.S. 337,
346(1997).   It does so by prohibiting employer actions that are likely "to deter victims of
discrimination from complaining to the EEOC," the courts, and their employers. Ibid. And normally
petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.
*See* 2 EEOC 1998 Manual§ 8, p. 8-13.c

*Burlington Northern*, 126 S.Ct. at 2415.

adverse action were not 'wholly unrelated'." *Gupta*, 212 F. 3d at 590 (internal citations omitted).  The temporal proximity must be "very close".  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).  The *McDonnell Douglas* burden shifting framework applies in evaluating Title VII retaliation claims.  *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

### 2.   Analysis: Retaliation Discrimination

Malladi relies on the same conduct for her disparate treatment and retaliation discrimination claims.  Accordingly, all but one the retaliation claims fail for lack of a prima facie case due to the same deficiency discussed in the context of her  race, national origin, gender, and disability disparate treatment claims – lack of an adverse employment action.  Even if the evidence presented no issue regarding the existence of an adverse employment action, it clearly fails to establish the requisite causal connection between Malladi's protected EEO activities and any of the challenged acts.  The sole remaining claim – non-application/non-selection as Physician Manager, also falls for lack of any credible evidence that TVAMC made its selection decision in retaliation for Malladi's EEO activities.

In sum, like the Title VII disparate impact claims and her disability claims, Malladi's retaliation discrimination claim cannot survive summary judgment because Malladi's evidentiary submission fails to place at issue any  material facts necessary to establish the requisite elements for these causes of action.

### V.   CONCLUSION

Pursuant to the factual findings and legal conclusions discussed in this Memorandum Opinion, it is the ***Recommendation of the Magistrate Judge*** that the Defendant VA Secretary's ***Motion for Summary Judgment, or in the Alternative, Motion to Dismiss*** (Doc. 29) be

**GRANTED in full to the extent of the  Rule 56 motion for SUMMARY JUDGMENT** and denied to the extent of its  Rule 12(b)(6)motion for dismissal.  The Magistrate Judge also recommends that costs be taxed against Plaintiff Malladi, for which execution should issue.

 **It is further ORDERED** that the parties  file any objections to this Recommendation not later than September 13,  2006.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be  considered by the District Court.   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

 Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

 DONE THIS 31th  day of August , 2006.


          **/s/ Delores R. Boyd**
          DELORES R. BOYD
          UNITED STATES MAGISTRATE JUDGE